IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01525-WDM-MEH

HANS-GERD RASENACK, by and through Jessica Tribolet, his duly appointed Guardian and Conservator, and
JESSICA TRIBOLET, as duly appointed Guardian and Conservator of Hans-Gerd Rasenack,

    Plaintiffs,

v.

AIG LIFE INSURANCE COMPANY, and
AIG CLAIMS SERVICES, INC.,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on the Motion for Summary Judgment filed by Plaintiffs Hans-Gerd Rasenack ("Rasenack") and Jessica Tribolet ("Tribolet") (doc no 27) and the Motion for Summary Judgment filed by Defendants AIG Life Insurance Company ("Insurer") and AIG Claims Services, Inc. ("Administrator") (collectively "AIG") (doc no 39). After a review of the briefs and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, Defendants' motion will be granted and Plaintiffs' Motion will be denied.

### Background[1]

---

[1] The facts set forth herein are drawn from the parties' briefs and are undisputed, unless otherwise noted.

This is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Rasenack was covered by an accidental death and dismemberment policy (the "Policy") through his employer, Mariott. On May 21, 2003, Rasenack, then forty-eight, was struck as a pedestrian by an automobile and severely injured. Tribolet, Rasenack's wife, submitted a written claim for benefits under the Policy.

The Policy vests Insurer with "sole and absolute final discretion to determine eligibility for benefits, to construe the terms of the policy and to resolve any factual issues relevant to benefits." Policy, Exhibit A to Defendants' Memorandum Brief in Support of Motion for Summary Judgment, at 3. Administrator is given "sole and absolute final discretion to determine eligibility to participate in the Plan and to resolve any factual issues relevant to eligibility or enrollment," as well as "full discretionary authority to interpret the provisions of the Plan with respect to eligibility and participation" in administrative appeals. *Id.* at 3 and 17.

Defendant Administrator is owned by the Insurance Company of Pennsylvania and American Home Assurance Company. Both of the companies that own Administrator are in turned wholly owned by American International Group, Inc. American International Group, Inc., also directly and indirectly owns Defendant Insurer. All members of Administrator's appeals committee are current or retired employees of the AIG family of companies.

The Policy provides paralysis and rehabilitation benefits in the event the insured suffers quadriplegia, paraplegia, hemiplegia, or uniplegia. *Id.* at Policy Amendment Rider #9, (1)(B) and (C). Hemiplegia is defined in the Policy as "the complete and irreversible

paralysis of upper and lower limbs of the same side of the body." *Id.* The Policy also provides that claims for coverage will be processed within 90 days unless "special circumstances" warrant an exception and that in no event would claims processing exceed 180 days. *Id.* at 16. Under the Policy, appeals are also to be decided within 60 days, unless an extension is warranted. *Id.* at 17. Similar deadlines are established by ERISA regulations. 29 C.F.R. §§ 2560.503-1(f)(1), 2560.503-1(i)(1)(i).

Plaintiffs filed their claim on July 21, 2004, asserting that Rasenack was hemiplegic. Administrator denied the claim on November 15, 2005. Plaintiffs administratively appealed the denial of benefits on January 13, 2006. On August 3, 2006, after the time expired for Administrator to make a determination on the appeal, Plaintiffs filed their complaint in this action. On August 31, 2006, Administrator denied Plaintiffs' appeal.

Plaintiffs rely on the following evidence in support of their claim that Rasenack is completely and irreversibly paralyzed on his left side:

1. A June 20, 2003 record in which Karen Hildebrand, RN, assessed Rasenack for brain injury and noted "[v]ery limited movement of the RUE and RLE, and no movement of the left side."

2. Another note by Nurse Hildebrand dated July 1, 2003 in which she noted that Rasenack's "left side remains plegic with increased tone and with apparent discomfort with ranging."

3. An examination note from Dr. Alan H. Weintraub, one of Plaintiff's treating physicians, dated July 7, 2003, stating, "The left upper extremity is plegic and spastic, held in extensor position. Left lower extremity is plegic as well,

3

    spastic and hyperreflexic."

4. A letter from Dr. Weintraub to Kellieanne Boris, RN, an employee of a claim services company hired by Insurer to manage Plaintiffs' claim, in which Dr. Weintraub opines, *inter alia*, that "the accidental injury to Mr. Rasenack did result in hemiplegia," "Mr. Rasenack's paralysis does appear to be complete and irreversible," and that Rasenack was in a coma for approximately three weeks following his initial injury.  The letter was dated October 11, 2004.

5. A report from Dr. Weintraub dated November 24, 2004, summarizing Rasenack's condition upon admission to a rehabilitation hospital, including "post traumatic amnesia . . . bilateral hemiparesis, left worse than right with spasticity/rigidity" and noting that Raseneck required continued assistance for all activities of daily living and was completely disabled.

6. A report from Nurse Boris after she interviewed Rasenack in his home on December 14, 2004, in which she noted that Rasenack was belted in a wheelchair throughout the interview, did not move his legs at all, and did not move his left hand except to occasionally squeeze a therapy ball.

7. An email exchange between Administrator and Nurse Boris in which Nurse Boris reaffirms that she observed Rasenack using only his right extremity during her visit with him.

8. Evidence contained in an affidavit from Tribolet, describing her observations of Rasenack, which was submitted to Administrator as part of the administrative appeal.

Administrator's claims service sent Rasenack's medical records and other information to Dr. Ronald DeVere for an independent opinion. Dr. DeVere opined that Rasenack suffered from hemiparesis (weakness on one side of the body due to disturbance in brain function), not hemiplegia (complete inability to move), on his left side. Dr. DeVere noted that several records indicated that Rasenack had some movement and strength in his left arm and leg. Relying heavily on Dr. DeVere's report, AIG denied the claim on the grounds that Rasenack was not hemiplegic. In processing Plaintiffs' appeal, AIG obtained another review opinion from Dr. James B. Sarno. Dr. Sarno also opined that Rasenack suffered hemiparesis, not complete and irreversible hemiplegia.

The Amended Complaint, which now governs this action, contains a single claim for benefits pursuant to 29 U.S.C. § 1132.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element

essential to the case." *Id*.

Discussion

1.   Review of denial of benefits

The applicable standard of review for a decision by an administrator of an ERISA plan is highly contested by the parties, as it may be dispositive in this case. Plaintiffs contend my review of the denial of benefits should be *de novo* or, in the alternative, heightened to some degree. Defendants, on the other hand, argue that the standard is essentially an abuse of discretion–i.e., a determination of whether the administrator's decision was arbitrary and capricious. Regardless of the standard applied, in reviewing a plan administrator's decision, I may only consider the evidence and arguments that appear in the administrative record. *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).

Because of changes in ERISA regulations, the issue appears to be one of first impression, albeit with some Tenth Circuit and Supreme Court precedent available for guidance. It is well established that, in general, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties do not appear to dispute that the plan gives the administrator this discretion and so the administrator's decision ordinarily would be reviewed under an arbitrary and capricious standard. *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1991).

Plaintiffs, however, argue that the failure of AIG to decide Plaintiffs' claim within the time limits contained in the Policy and in ERISA means that *de novo* review should apply, citing *Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625 (10th Cir. 2003). I disagree that *Gilbertson* mandates a *de novo* review. In *Gilbertson*, the claims administrator failed to make a determination on the claimant's appeal of the denial of benefits under an ERISA plan. Under the regulations then in force, if an administrator failed to furnish a appeal decision within the regulatory deadlines, the claim was "deemed denied" on review. 29 C.F.R. § 2560.503-1(h)(4) (1999). The court in *Gilbertson* noted that judicial deference to an administrator's exercise of discretion was unwarranted where the administrator had simply failed to exercise discretion and allowed the claim to be denied by operation of law. 328 F.3d at 632. Thus, the Tenth Circuit held that *de novo* review would apply where a claim was deemed denied by virtue of the expiration of the mandated time periods, unless the delay was inconsequential and the result of an "ongoing, good faith exchange of information" between the claimant and administrator. *Id.* at 635.

Here, however, the claim was not deemed denied, but rather the denial was untimely, well after the prescribed deadline for action by Defendant. In addition, the "deemed denied" provision of the regulations has been amended; for claims filed after January 1, 2002, such as this case, the failure of the administrator to act within the regulatory time frames means that the claimant is "deemed to have exhausted the available administrative remedies." 29 C.F.R. § 2560-503-1(l). The Tenth Circuit has noted this change and expressly reserved the question of whether it alters the *Gilbertson* principles. *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379

F.3d 1168, 1175 n.6 (10th Cir. 2004). Regardless, I conclude that the *Gilbertson* rationale supporting *de novo* review is inapplicable to the case presented here.

Given the common ownership of Insurer and Administrator, the most pertinent Tenth Circuit authority for this case, although not analyzed in detail by any party, is *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997 (10th Cir. 2004). *Fought* begins the analysis with the acknowledgment that an arbitrary and capricious standard remains applicable but it concludes that a less differential review is given to a conflicted administrator's decision in proportion to the seriousness of the conflict. *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996). Prior to *Fought* this so-called "sliding scale" approach had not been well defined. *Fought*, 379 F.3d at 1004.

The first step of the *Fought* analysis is to distinguish between a "standard" conflict of interest and an "inherent" or "serious" conflict. In the former circumstance, the conflict is simply one factor in determining whether the administrator's denial was arbitrary and capricious. For the second circumstance, the inherent or serious conflict of interest, the court shifted the burden to the administrator "to establish by substantial evidence that the denial of benefits was not arbitrary and capricious." *Id.* at 1005. Accordingly, I must first determine whether the conflict is "standard" or "serious."

*Fought* imposes the burden of proving whether the conflict of interest is serious or inherent upon the plaintiff and lists the following factors as demonstrative of inherent or serious conflict: (1) inherent conflict such as acting as both the insurer and administrator; (2) proven conflict of interest; or (3) a serious procedural regularity exists. If serious conflict is proved, the review is less differential and the administrator has the burden of

proving the reasonableness of its decision. In particular, "the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id.* at 1006. I must carefully review the evidence and arguments of the administrator "to insure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id.*

2. Application.

Applying the *Fought* burden shifting analysis to this case, Defendants dispute whether Plaintiff has proved a conflict of interest. However, as *Fought* has observed, where a company is both the insurer and the administrator of the plan there exists an inherent conflict. *Id.* at 1006. There is no good faith dispute but that there is common ownership of Insurer and Administrator here by American International Group. *See* Plaintiff's opening brief (doc. no. 30) 15-16.

In addition, Administrator's delays in the initial and appellate decisions were months beyond the deadlines imposed by the Policy and ERISA and not simply the result of delays by Plaintiffs, which amounted to a few weeks at most, or a good faith exchange of information. For example, the interview with Rasenack was completed in December 2004, and the opinion letter from Dr. DeVere was dated February 26, 2005; nonetheless, Administrator did not deny the initial claim until November 2005, and the delay appears to be completely unjustified. Similarly, the lengthy processing time after the filing of Plaintiffs' appeal and the letter from Dr. Sarno, dated May 15, 2006, is not explained by any problems obtaining information or other good reason. These are plainly procedural

irregularities that I consider serious.

Accordingly, I conclude that Plaintiff has established a serious conflict of interest, given the inherent conflict and the serious procedural irregularities combined with the denial of coverage.

I therefore proceed to determine whether (1) the administrator's plan interpretation was reasonable and (2) the application of those terms to the facts of this case is supported by substantial evidence.

I first conclude that Administrator's interpretation of the plan as being limited to hemiplegia as a complete and irreversible paralysis of the limbs on one side of the body is a reasonable interpretation of its terms, including the limited definition of complete paralysis of both limbs as opposed to a "bilateral hemiparesis." These definitions have plain meaning.

Proceeding to the second question of whether Administrator's application of the terms of the plan to the claimant is supported by substantial evidence, I apply the established standard that substantial evidence is such that a reasonable mind would accept as adequate to support the conclusion. "Substantial evidence requires more than a scintilla but less than a preponderance." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992).

I conclude that Administrator's determination that Rasenack's condition was not "complete and irreversible" paralysis of the left side, and thus outside the scope of the Policy, is supported by substantial evidence, particularly in light of the opinions of the two reviewing physicians, Dr. DeVere and Dr. Sarno, as well as the records relied upon by

Plaintiffs.[2] Even Dr. Weintraub, the treating physician, in his November 24, 2004 treating notes and other records, classifies Rasenack's condition as "bilateral hemiparesis," which the evidence demonstrates is weakness, and perhaps a degree of paralysis, but not a complete and irreversible inability to move.[3] It is clear that Rasenack is terribly disabled and has exceedingly reduced capacity in his left upper and lower extremities, but the Policy at issue here is a death and "dismemberment" policy, not a death and "disability" policy. There is substantial support for Administrator's determination that Rasenack retains some strength and movement on his left side, including, *inter alia*, his ability to squeeze a ball with his left hand, ability to use his left hand as a stabilizer, treatment notes from November 12, 2003 indicating increased "range of motion and strength" on the left side, treatment records dated February 27, 2004 diagnosing "a left hemiparesis with motor and sensory involvement," and a June 9, 2004 treatment note from a hand surgery consultation recommending that Rasenack "be encouraged to continue to use the left hand and carry out some dexterous tasks in a therapy type setting as much as possible to encourage continued use." Given this evidence, Administrator's decision not to give Dr. Weintraub's single letter opining that Rasenack had complete and irreversible hemiplegia, as well as other evidence describing Rasenack's limbs as "plegic," controlling weight was reasonable.

Plaintiffs argue that the letter from Dr. DeVere should be disregarded in this review

---

[2] Retention of independent evaluators indicates a thoroughness of investigation and promotes the purposes of ERISA. *Fought*, 379 F.3d at 1015.

[3] The statement by Nurse Boris that "hemiparesis" is the same as "hemiplegia" is noted, but does not require deference in light of the significant evidence to the contrary.

11

because it is unsigned and was untimely and that the letter from Dr. Sarno should not be considered because it was also untimely. Plaintiffs have cited no legal authority in support of this argument and I see no basis to find that the letters or the opinions are unreliable. Plaintiffs also contend that the letters should be disregarded because AIG "cherry picked" the evidence it supplied to these physicians. The record, however, does not indicate selective provision of evidence to the outside reviewers. Finally, Plaintiffs contend that the evidence supports a diagnosis of "paralysis" because Rasenack suffered loss of sensation in his left extremities. Plaintiffs argue that loss of sensation is a characteristic of hemiplegia, not hemiparesis, because certain medical dictionary definitions define paralysis as "loss of muscle function, or sensation, or both." However, in light of the significant evidence supporting the diagnosis of hemiparesis and an explanation from Dr. Sarno that loss of sensation does not negate the diagnosis of hemiparesis, I conclude that Administrator's decision to construe the term "paralysis" as a complete inability to move is reasonable and supported by substantial evidence including independent expert opinion. Hence, Administrator's decision was not arbitrary and capricious.

Accordingly, it is ordered:

1. The Motion for Summary Judgment filed by Plaintiffs (doc no 27) is denied.
2. The Motion for Summary Judgment filed by Defendants (doc no 39) is granted. Judgment in favor of Defendants shall enter.

3.      Defendants may have their costs.

DATED at Denver, Colorado, on November 14, 2007.

                                                 BY THE COURT:

                                                 s/ Walker D. Miller
                                                 United States District Judge